### In re HAIMOWICH.

#### (District Court, E. D. Pennsylvania. April 12, 1916.)

#### No. 4601.

1. BANKRUPTCY ⟳414(1)—DISCHARGE—REFUSAL—BURDEN OF PROOF.

Under Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (Comp. St. 1913, § 9598), providing that the judge shall discharge the applicant unless he has, among other things, obtained money or property on credit upon a materially false statement in writing for the purpose of obtaining credit, the burden is on the creditor, objecting to discharge, to sustain the allegations in his specifications of objection.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. ⟳414(1).]

2. BANKRUPTCY ⟳407(5)—DISCHARGE—REFUSAL—FALSE STATEMENT.

One who made a materially false statement of his assets and liabilities to a mercantile agency, and who testified that he made it for the purpose of having the agency distribute it among his creditors, made the agency his agent to circulate the false statement, and where it was sent to a creditor, who sold goods in reliance thereon, the discharge in bankruptcy will be refused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761; Dec. Dig. ⟳407(5).]

In Bankruptcy. In the matter of Jacob Haimowich, bankrupt. On exceptions to the report of the special referee, sustaining specifications of objection to discharge and recommending that discharge be refused. Exceptions dismissed, and report confirmed.

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Julius C. Levi, of Philadelphia, Pa., for objecting creditors and trustee.

Israeli & Blieden and Alfred Aarons, both of Philadelphia, Pa., for bankrupt.

THOMPSON, District Judge. Seven specifications of objection were filed and referred to the referee. He reports that, in his opinion, the third and fourth specifications should be sustained, and he recommends that the bankrupt's petition be refused, and the remaining five specifications be dismissed.

No exceptions were filed by the trustee, and the case comes before the court upon exceptions of the bankrupt to the referee's findings sustaining the third and fourth specifications, and to the recommendation that the petition for discharge should be refused. The report of the referee does not contain any findings of fact nor a summary of the evidence. It is necessary, therefore, to determine whether the evidence would sustain findings of facts sufficient to support the general conclusion of the referee.

[1] The Bankruptcy Act (section 14b) provides that:

"The judge shall * * * discharge the applicant unless he has * * * (3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

The specifications, which, in the referee's opinion, should be sustained, are based upon obtaining money or property upon credit upon a materially false statement in writing made to certain named creditors for the purpose of obtaining credit from such persons, in that during the month of March, 1912, the applicant made a written statement to the commercial agency of R. G. Dun & Co., which is alleged to be materially false in stating that his merchandise at cost amounted to $8,227, that his accounts receivable at actual value amounted to $6,440, that his liabilities on accounts amounted to $1,430, and that he had a surplus over all his liabilities of $16,348. The act provides that the judge shall discharge the applicant unless he has done one or more of the prohibited things. The burden is therefore upon the objector to sustain the allegations in his specifications of objection.

[2] It appears from an examination of the evidence that it was sufficient to justify the referee in finding that the statement in writing made to Dun & Co. was materially false, and also in the conclusion that:

"His [the bankrupt's] attempt to explain his conduct in giving to his creditors a false statement of his financial condition in order to obtain credit is so flagrantly evasive and false that the referee cannot treat his testimony with any degree of seriousness whatever."

The testimony also justifies the conclusion that the statement was made for the purpose of obtaining credit from the bankrupt's creditors. The bankrupt testified as follows:

"Q. I want to direct your attention to the statement which you made to the mercantile agency of R. G. Dun & Co. during March, 1912, which is a

signed statement as per inventory of March 9, 1912, as follows: [Here follows the statement of the assets, liabilities, sales, etc., signed by the bankrupt.] That statement was given by you? A. Yes. Q. And you knew it was given for the purpose of getting credit? A. Yes. Q. And you wanted R. G. Dun & Co. to give that information to anybody who would inquire about your standing, so you could get credit for merchandise you would buy during the year 1912. That is true, isn't it? A. Yes. Q. And the purpose of giving this financial statement to R. G. Dun & Co. was to enable them to distribute it among your different creditors whenever they would ask for information. You knew that, didn't you? A. Yes."

The testimony shows that the information contained in the statement was given to the firm of Cross, Engel & Co., in a report of the bankrupt from the Dun agency in September, 1912, and that, relying upon that report, their creditman authorized the firm's salesman to sell goods to the bankrupt, and that in accordance with such instructions the goods were sold and shipped to him during October and November, 1912, amounting to $703.75. The purpose of giving this statement, the bankrupt's own testimony shows, was not merely to obtain a rating, but to obtain credit through R. G. Dun & Co. The bankrupt made R. G. Dun & Co. his duly authorized agent to circulate the falsehoods concerning his financial condition among his different creditors whenever they should ask for information, and the case therefore falls directly within the terms of section 14b of the Bankruptcy Act. The Engel transaction is sufficient upon that point to sustain the recommendations of the referee.

The exceptions will therefore be dismissed, and the report confirmed.