## HAIMOWICH v. MANDEL.

(Circuit Court of Appeals, Third Circuit. May 19, 1917.)

No. 2182.

1. BANKRUPTCY ⬤⇒407(5)—DENIAL OF DISCHARGE—GROUNDS—FALSE FINANCIAL STATEMENT.

Under Bankruptcy Act July 1, 1898, c. 541, § 14b, 30 Stat. 550, as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839, providing for the denial of a discharge, if the bankrupt has obtained money or property on credit upon a materially false statement in writing made by him to any person, where the bankrupt made a financial statement to a mercantile agency in anticipation of general trade inquiries to be made from time to time in the future, and not in response to a particular trade inquiry, and thereafter one subsequently becoming a subscriber to such agency was furnished such statement by the agency, and was induced by its falsity to extend credit at a time when the bankrupt intended the statement to serve such purpose, a discharge was properly denied, as a mercantile agency is the representative of its subscribers, and a statement to the trade generally through the agency is made to it as an agent or representative of those who are then its subscribers, and those who become its subscribers

during the period through which the statement is intended to be used, and is in fact used, in obtaining credit.

2. BANKRUPTCY ⊂⇒407(5)—DENIAL OF DISCHARGE—GROUNDS—FALSE FINANCIAL STATEMENT.

In the absence of any intervening changes in a bankrupt's financial condition, serving to abbreviate the period during which a financial statement to a mercantile agency is intended to be used in obtaining credit, the test of whether a false statement given upon one date, and communicated and acted upon on a later date, bars a discharge, is whether the agency was the representative of the prospective creditor when the statement was communicated to and acted upon by him, and whether at that time the statement was still in force, dependent upon whether the sale on credit was the proximate result of such statement, and whether its original falsity was the cause of the extension of credit.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

In the matter of Jacob Haimowich, bankrupt. From an order (232 Fed. 378) refusing a discharge, opposed by David Mandel, Jr., trustee, the bankrupt appeals. Affirmed.

Wm. F. Berkowitz, Israeli & Blieden, and Samuel W. Salus, all of Philadelphia, Pa., for appellant.

J. C. Levi, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This appeal concerns the discharge of a bankrupt. The referee found against the discharge, and the District Court sustained his finding. 232 Fed. 378.

In March, 1912, the bankrupt gave R. G. Dun & Co. a statement purporting to show his true financial condition. He omitted $6,000 to $7,000 of bills payable, whereby his assets of something less than $10,000 were falsely swollen to $16,000. On April 1, 1912, Gross, Engel & Co. became subscribers to Dun & Co., and in September following, while still subscribers, made inquiry concerning the bankrupt's financial standing. They received from Dun & Co. the bankrupt's statement of the previous March, and relying upon it, sold the bankrupt goods and extended him credit. Involuntary proceedings in bankruptcy followed, and upon their termination the bankrupt petitioned for discharge. His petition was opposed upon the ground that he had forfeited his right to a discharge under section 14b of the Bankruptcy Act (Act of July 1, 1898, c. 541, 30 Stat. 550, as amended by the Act of February 5, 1903, c. 487, § 4, 32 Stat. 797, and by the Act of June 25, 1910, c. 412, § 6, 36 Stat. 839), which provides that:

"The judge shall * * * discharge the applicant unless he has * * * (3) obtained money or property on credit upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person."

[1] Upon controverted questions of fact it was found, and we think properly so, that the bankrupt had obtained *property* from Gross, Engel & Co. *on credit* extended in reliance upon his statement to

Dun & Co.; that the statement was *materially false* in that it omitted the most of the bankrupt's indebtedness; that it was "knowingly" false, notwithstanding the bankrupt's explanation that he thought he was asked to give only his *"accounts* payable" and not his *"bills* payable"; and that the statement was *in writing* and made *for the purpose of obtaining credit.* This leaves for discussion the question: Whether in making the false statement to the mercantile agency for the purpose of obtaining credit, the bankrupt made the statement to the "representative" of the "person" from whom property on credit was afterward obtained, within the meaning of the act.

The applicable provision of the Bankruptcy Act (section 14b), as it stood before the amendment of June 25, 1910, provided that discharge shall be refused if the bankrupt has—

"obtained property on credit from any person upon a materially false statement in writing *made to such person* for the purpose of obtaining such property on credit." (32 Stat. 797.)

This provision was held to apply to cases where the bankrupt made a false statement directly to the person *from whom* he obtained property on credit, and as statements are not made to mercantile agencies for the purpose of obtaining property on credit *from them,* the provision was construed not to include the ordinary statement of financial condition made to a mercantile agency for general circulation among its inquiring subscribers. In re Russell, 176 Fed. 253, 258, 100 C. C. A. 77. To this broad interpretation some courts made an exception to the effect that a false statement made to a mercantile agency when it was acting upon the specific request of a subscriber, was within the provision and barred a discharge. In re Pincus (D. C.) 147 Fed. 623; In re Carton & Co. (D. C.) 148 Fed. 63. The Circuit Court of Appeals for the Second Circuit withheld its approval of this ruling by declining to express an opinion as to its correctness. In re Russell, 176 Fed. 253, 259. In this state of the decisions, the amendment of June 25, 1910, was enacted, which, while altering somewhat the phraseology of the provision, changed its meaning only by enlarging it so as to include a false statement made to the "representative" of the person from whom credit was obtained.

The extent to which the amendatory words "or his representative" enlarge the provision has not been very generally considered by the courts. The Circuit Court of Appeals for the Second Circuit, in discussing the provision as last amended, in Re Zoffer, 211 Fed. 936, 128 C. C. A. 434, said:

"That clause certainly cannot be construed to cover 'general statements to mercantile agencies, not specifically asked for by prospective creditors.' "

thereby indicating (as insisted by the bankrupt) that the amendment was but a statutory declaration of the judicial view previously expressed in Re Pincus and in Re Carton & Co., supra.

In seeking the exact meaning of this expression we must consider the facts to which it had reference. These are so meagrely reported that we do not know whether the expression was intended to extend broadly to a case like the one under consideration or was narrowly

limited to the facts of the case in which the expression was used. It appears from the report that the bankrupt gave the mercantile agency a false statement upon a request made generally and not upon the request of a subscriber. After the statement was given, nothing happened so far as the report shows. It does not appear that the false statement was afterwards communicated to a subscriber or that any subscriber otherwise knew of it, or, relying upon it, extended credit to the bankrupt. If in fact the false statement was made generally to the mercantile agency and was not afterward communicated to a subscriber, and if, therefore, no credit was procured upon faith in it, then obviously the provision, which contemplates obtaining property on credit based upon a false statement, does not extend to a false statement alone.

But in the case under consideration, the bankrupt gave the mercantile agency a false statement for distribution among the trade for the purpose of obtaining credit, and though not given upon the specific request of a subscriber, it was subsequently communicated to a subscriber upon his request, with the result that it induced the extension of credit intended. The amendment of 1910, which bars a discharge when a false statement has been made to the "representative" of the person from whom property has been obtained on credit, does not prescribe that the statement to the representative must be made upon the specific request of the person extending the credit. It simply enlarges the number and character of persons to whom the making of a false statement operates as a bar to a discharge. The test, therefore, is whether the agency to which the false statement was made was in fact the representative of the person who receiving the statement extended credit. From the very nature of its occupation, a mercantile agency is the representative or agent of its subscribers in the business of obtaining for them credit ratings of persons with whom they propose to have dealings, and when a false statement is made to such representative and is communicated to the subscriber with the result that the subscriber, relying upon it, sells property and extends credit to one who becomes bankrupt, then the situation contemplated by the provision arises. If the amendment of 1910 did not thus enlarge the provision, then it did not change the law from what the courts had interpreted it to be before the addition of the word "representative."

Assuming that a mercantile agency may be the representative of its subscribers within the meaning of section 14b of the Bankruptcy Act as amended, the novel question in this case is whether the bankrupt made the false statement to the agency as the representative of the objecting creditors, in view of the fact that at the time the statement was handed the agency the objecting creditors were not subscribers. The determination of this question is controlled more by the character of the statement and the circumstances under which it was given than by the date of its delivery.

It may again be noted that the statement was flagrantly false; that the bankrupt admitted that he made it for the purpose of obtaining credit not from any particular person but from the trade generally,

which he addressed through the medium of the mercantile agency. This statement was not made in response to a particular trade inquiry but was made in anticipation of general trade inquiries to be made from time to time in the future. The statement given the agency was therefore in the nature of a general and continuing statement, addressed in effect to whom it may concern and running for an indefinite period.

[2] When the bankrupt addressed the statement to the trade generally through the agency, he gave it to the agency as the "representative" of any subscriber thereafter seeking information concerning his financial standing. The statement was therefore made to the agency in its capacity of agent or representative of those who were then subscribers and also of those who became its subscribers during the period through which the statement was intended to be used and was in fact used in obtaining credit. Such a period may be long or short according to varying circumstances and may conceivably be abbreviated and ended by intervening changes in the bankrupt's financial condition, but in the absence of such (and none appears in this case), the test of whether a false statement given upon one date and communicated and acted upon on a later date operates as a bar to a discharge, is twofold: (1) Whether the agency was the representative of the prospective creditor at the time the statement was communicated to and acted upon by him; and (2) whether at that time the false statement was still in force and binding upon the bankrupt, to be determined according as it is found that the sale on credit was or was not the proximate result of the statement (In re Braverman [D. C.] 199 Fed. 863, 28 Am. Bankr. Rep. 513), and that its original falsity was or was not the thing that worked the mischief.

Applying this test, we are of opinion that the agency was the representative of the objecting creditors at the time the bankrupt's false statement was communicated to them, and that the objecting creditors were induced by the falsity of the statement to extend credit to the bankrupt at a time when the bankrupt intended the statement to serve that end.

The decree below is affirmed.