## In re NORTHRIDGE.

District Court, S. D. New York.
July 2, 1931.

Ellsworth Baker, of Monticello, N. Y., for bankrupt.

William J. Lamont, of Newburgh, N. Y. (M. Michael Edelstein, of New York City, of counsel), for objecting creditors.

COXE, District Judge.

This is a motion to confirm a master's report overruling specifications of objection to a bankruptcy discharge, and recommending that the discharge be granted. The motion is opposed by objecting creditors, who ask that the discharge be denied.

The specifications in general are: (1) That the bankrupt failed to keep proper books of account; and (2) that he swore falsely in the proceedings and in his schedules in certain specified particulars.

The master held that none of the specifications had been proved, and although he found that the bankrupt did not keep books, he stated that "there seems to be no reason why he should have kept books of account of his transactions as insisted upon by the objecting creditors."

The bankrupt is a Methodist minister, and was for two years prior to the filing of the voluntary petition on March 26, 1928, a pastor of the Vail's Gate and Mountainville M. E. Churches, located in small communities near Newburgh, N. Y. His yearly salary from each of these churches was $600, making $1,200 in all, and he was given in addition the use of a parsonage having a rental value of $300. He was also in receipt of a war pension from the British government of $300 annually. During the two years of his pastorate, he received numerous gifts from his parishioners ranging from $600 in one instance to smaller gifts of $50 and $25. His yearly income, therefore, although modest, was amply sufficient to maintain him in his calling in the community in which he lived.

Notwithstanding this, he borrowed in less than two years over $4,000 from one of the churches, members of his congregations, banks, and tradespeople in the community. He also ran up substantial bills with many of the shops in the neighborhood. He gave as a reason for his importunate borrowings that his wife became ill in 1927, and

it was necessary for her to go to Saranac for treatment. She was there, however, only nine weeks, and her medical treatment cost her nothing. Her total expenses during these nine weeks was not over $415, and while she was away the bankrupt obtained his meals free of charge at the homes of his parishioners; and his child was cared for by a member of his congregation. In the face of such a showing, it was manifestly incumbent upon the bankrupt to explain satisfactorily the reasons for his financial condition.

In the fall of 1927, the bankrupt showed one of the persons from whom he was seeking to borrow money a list of his liabilities; but there was no such list in existence at the bankruptcy. The bankrupt freely admitted before the master that he did not keep any memoranda or books, and that he had destroyed part of his canceled checks; and there was practically nothing from which the creditors might ascertain his true financial condition.

Obviously, this was not a compliance with section 14b of the Bankruptcy Act, as amended by Act May 27, 1926, § 6 (11 USCA § 32 (b), which specifies as a ground for refusing a discharge that the bankrupt has "destroyed ❊ * * or failed to keep books of account, or records, from which the financial condition and business transactions might be ascertained." The law does not demand the impossible, and in the circumstances in which the bankrupt was situated, it was not necessary to keep elaborate books of account, or comprehensive records, to show his financial condition, but it was essential that there should be in fairly complete form books or records sufficient to disclose or reflect with a fair degree of accuracy the financial condition and business transactions of the bankrupt at the time of and prior to the filing of the petition.

The right to a discharge is not something which a bankrupt is entitled to for the mere asking. It is a high privilege which should not be granted except in clear cases where all the statutory conditions and requirements have been fully met and complied with; and I do not think that in this case it can be said that these conditions and requirements have been either met or complied with. I, therefore, sustain the exceptions to the master's report with respect to the books:

With respect to the remaining specifications, I think the master was correct in holding that they have not been satisfactorily proved.

The master's report is refused confirmation, and the bankrupt is denied his discharge.