In re Mario and Lucy LORENZATO,
Debtors.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES CO.,
INC., Plaintiff,

v.

Mario and Lucy LORENZATO,
Defendants.

Bankruptcy No. 91 B 21691.

No. 92 B 5032.

United States Bankruptcy Court,
S.D. New York.

Nov. 23, 1992.

Michael H. Schwartz, White Plains, N.Y., for American Express Travel Related Services Co., Inc.

Carl T. Holt, Westport, Conn., for Mario and Lucy Lorenzato.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Plaintiff, American express Travel Related Services Co., Inc. ("American Express"), seeks to deny the debtors' discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(A), involving a fraudulent concealment of assets subsection (a)(4)(a), relating to a false oath, and subsection (a)(5), concerning a failure to explain satisfactorily a loss or deficiency of assets. Additionally, American Express seeks a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), based on the debtors' allegedly obtaining property from American Express by false representations or fraudulent conduct.

## FINDINGS OF FACT

1. The debtors, Mario Lorenzato and Lucy Lorenzato, are husband and wife who jointly filed with this court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 30, 1991, which constituted an order for relief pursuant to 11 U.S.C. § 301.

2. The plaintiff, American Express, is engaged in the business of issuing credit cards to approved members and providing credit services for its cardholders.

3. In September of 1982, the defendant, Mario D. Lorenzato, applied for and obtained for himself and his wife, Lucy Lorenzato, an American Express card and a supplemental American Express card for his wife.

4. In December of 1990 and January of 1991, eight jewelry items were ordered by telephone from the American Express Catalog collection and charged to the debtors' American Express Card. To verify the purchase, the American Express representative asked for and obtained debtor Lucy Lorenzato's social security number in addition to her American Express Card number. Four of the deliveries were to be made to Lucy Lorenzato's residence at Laurel Road in Pound Ridge, New York, and four of the deliveries were to be made to Lucy Lorenzato at her daughter's residence at Salem Road, Pound Ridge, New York. A detailed description of each of the jewelry shipments is as follows:

| | | |
|---|---|---|
| 1. | December 18, 1990—5 carat diamond ring, Shipped December 12, 1990 to Laurel Road. | 5,995.00 |
| 2. | December 20, 1990—1 carat diamond/gold bracelet Shipped December 21, 1990 to Salem Road. | 1,995.00 |
| 3. | December 20, 1990—1 carat diamond/gold bracelet Shipped December 21, 1990 to Salem Road. | 1,995.00 |
| 4. | December 20, 1990—1 carat diamond/gold bracelet Shipped December 21, 1990 to Salem Road. | 1,995.00 |
| 5. | December 20, 1990—1 carat diamond/gold bracelet Shipped December 21, 1990 to Salem Road. | 1,995.00 |
| 6. | January 17, 1991—10 carat tennis bracelet Shipped January 21, 1991 to Laurel Road. | 12,000.00 |
| 7. | January 17, 1991—5 carat diamond ring Shipped January 21, 1991 to Laurel Road. | 5,995.00 |
| 8. | January 21, 1991—10 carat Tennis Bracelet, Shipped January 22, 1991 to Laurel Road. | 12,000.00 |
| | Total Purchases .............. | $43,970.00 |

5. All the jewelry shipments were delivered either by United Parcel or Federal Express. The representatives from these shippers testified that they were requested by American Express to trace these deliveries which they did. The United Parcel representative produced proof of the deliveries to the debtor's residence at Laurel Road. One of the delivery receipts was signed by the debtors' son-in-law, Anthony Marino. The Federal Express driver testified that he knew Lucy Lorenzato from previous deliveries and that the receipt for the 10 carat tennis bracelet was signed by Lucy Lorenzato at her Laurel Road residence. He also testified that the receipt for the delivery of a 1 carat diamond/gold bracelet was signed at the Salem Road address by G. Marino. The Lorenzato's daughter's name is Gina Marino.

6. Lucy Lorenzato testified that she never ordered the jewelry and never received delivery, either at her residence on Laurel Road or at her daughter's residence on Salem Road. She testified that she recalls that her husband, Mario Lorenzato, once telephoned American Express for the purpose of disclaiming liability for the jewelry purchases. Mario Lorenzato did not testify.

7. There was no evidence that the debtors ever submitted a written objection to any of the monthly statements of account issued by American Express nor did the debtors show that they ever corresponded with American Express to decline responsibility for the jewelry purchases.

8. The monthly statements of account from American Express between August 23, 1990 and May 25, 1991, which were mailed to the debtors, reflect substantial purchases by the debtors with the use of their American Express card, totalling $102,524.53, inclusive of charges and inter-

est. The purchases include items for clothing, jewelry, perfume, fine china and automobile accessories. During this period three checks, each in the sum of $24,508.00 were returned for nonpayment.

9. The debtors' Statement of Financial Affairs, which they filed with this court, reflect that they earned no income in 1990 and 1991 and that their income from other services totalled $864.00 per year. The $864.00 item represented an annual pension.

10. In Schedule B–2, Personal Property, they listed a value of $1,500.00 for wearing apparel, jewelry, firearms, sports equipment and other personal possessions.

11. The debtors did not list the jewelry purchases from American Express in December 1990 and January, 1991, totalling $43,970.00, nor did they give a satisfactory explanation as to what happened to the jewelry. Lucy Lorenzato simply denied that she purchased the eight jewelry items from American Express or that she ever received the jewelry shipments which the United Parcel and Federal Express representatives testified were delivered to the debtors' residence on Laurel Road and to the Salem Road residence of their daughter, Gina Marino.

12. Lucy Lorenzato's bald denial as to the purchase or receipt of the jewelry in question is not a satisfactory explanation because she did not speak for her husband, Mario, or her daughter, Gina, or her son-in-law, Anthony. A complete explanation would at least require that Mario, Gina and Anthony should also deny that they received or possess the jewelry in question. Hence, a mere denial by Lucy Lorenzato is incomplete and insufficient in the face of the testimony and written proof introduced by American Express.

## DISCUSSION

It boggles the mind that American Express would allow these credit card holders to run up an open credit account to $102,-524.53, including the purchase of jewelry items for $43,970.00, during the year immediately preceding their Chapter 7 petition, at a time when they admittedly received no income for two years, other than an annual pension of $864.00 per year. These circumstances are even more incredible in light of the fact that the monthly account statements issued by American Express reflect that during this period three payment checks, each in the sum of $24,508.00, were rejected and returned by the drawee bank. It would be difficult in this scenario to conclude that American Express relied upon the credit-worthiness of these debtors for purposes of nondischargeability under 11 U.S.C. § 523(a)(2)(A). However, this question need not be addressed because there is a more serious issue which affects the debtors' discharge in general, namely what happened to $43,970.00 worth of jewelry sold and delivered to them by American Express approximately ten months before they filed their Chapter 7 petition?

### The Missing Jewelry

The debtors maintain that no jewelry is missing because they neither ordered nor received delivery of eight items of jewelry with a total purchase price of $43,970.00. The debtors' denial is unbelievable in the face of the credible evidence to the contrary. The debtors' card number and social security number support the fact that the jewelry was ordered by them or by someone authorized by them to use their American Express credit card who was also familiar with Lucy Lorenzato's social security number. It is also uncontroverted that eight jewelry items purchased for $43,-970.00, were delivered by American Express to the debtor's residence or to the residence of their daughter. Lucy Lorenzato's signature appeared on one of the delivery receipts and her son-in-law's signature was on another receipt. The Federal Express delivery man identified Lucy Lorenzato's signature because he had delivered other items to her previously and was familiar with her signature. Additionally, the debtors never corresponded with American Express and offered no written disclaimers in response to the various monthly statements from American Express preceding their bankruptcy petition which reflected their obligation for the jewelry in question as well as other luxury items that they undeniably purchased with the use of their American Express card. Accordingly,

the debtors were under an obligation to account for the eight items of jewelry, totalling $43,970.00. This accountability is required under 11 U.S.C. § 727(a)(5), as follows:

§ **727. Discharge.**

(a) The court shall grant the debtor a discharge, unless—

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).

In the instant case, the debtors gave no explanation at all for the loss of the jewelry assets, as distinguished from an unsatisfactory explanation, because they contend there were no jewelry assets to lose. While the burden of persuasion rests on the creditor objecting to a discharge, the debtors cannot prevail if they fail to offer credible evidence after the creditor presents a *prima facie* case. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983); *In re Chachra*, 138 B.R. 397, 401 (Bankr.S.D.N.Y.1992) ("The creditors and the court need not be required to guess what actually occurred because such speculations do not serve as an adequate substitute for credible proof.") (citation omitted). The creditor need not prove that the debtors' failure to explain the loss of assets was accompanied by fraudulent intent because fraudulent intent is not a factor under 11 U.S.C. § 727(a)(5). *Chachra*, 138 B.R. at 403; *In re Bernard*, 99 B.R. 563, 571 (Bankr.S.D.N.Y.1989). *See* Weintraub and Resnick, *Bankruptcy Manual*, ¶ 3.03[5] (3d ed. 1992). In the instant case, American Express established that it sold and delivered eight items of jewelry to the debtors for $43,970.00, which items were charged to the debtors' account and with respect to which the debtors simply deny they either ordered or received them. They failed to offer any satisfactory explanation as to what happened to the jewelry or its whereabouts. Debtor Lucy Lorenzato's mere denial is simply not sufficient to rebut the overwhelming evidence introduced by American Express in support of its objection to the debtors' discharge. American Express has sustained its burden of persuasion by a preponderance of the evidence in this case. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(J).

2. American Express has established by a preponderance of the evidence that it sold and delivered to the debtors within approximately ten months before the filing of their Chapter 7 petition eight items of jewelry for $43,970.00 which they did not list in their schedules and which assets the debtors failed to explain satisfactorily their loss or disappearance within the meaning of 11 U.S.C. § 727(a)(5).

3. American Express has sustained its objection to the debtors' discharge, which shall be denied.

SETTLE ORDER on notice in accordance with the foregoing.